The next case on the docket is Amy Corbitt, et a v. Michael Vickers. Mr. Strickland is here for Corbitt. And Ms. Madison is here for Vickers. I'm sorry. On behalf of Ms. Corbitt. And so, Mr. Strickland, you're here for Vickers. And you may begin when you're ready. Thank you, Your Honor. May it please the Court, we're here today to answer the question whether on July 10th of 2014, it was clearly established that a reasonable law enforcement officer would have known that intentionally shooting at a dog, but missing the dog and striking a bystander, constituted a seizure under the Fourth Amendment. And I think the best place to start, for me, is at least in the District Court's order, and starting with this statement, which when we're looking at qualified immunity, I think this is a helpful statement, at least from my perspective. And in that, the District Court noted that no 11th Circuit case directly addresses how to handle the case where an officer shoots someone he was not aiming to hit. When I read that statement, I thought things would go well in the remainder of the order. And for the most part, they did. But I have disagreement with the District Court. But she went on in her opinion, didn't she, to cite our opinion in Spate v. Griggs for the proposition that an accidental discharge of a firearm resulting in an unintentional shooting during the course of an arrest may constitute excessive force under the Fourth Amendment if the officer's course of conduct preceding the shooting is unreasonable under the circumstances. So she went on. She didn't just stop there. She did not. And which page of the order was that, Your Honor? I don't have the page. Okay. Well, she did, but then in looking at the 11th Circuit case guiding this, because I'll also mention in the — Page 11. Right. And then with the — with regard to the Spike case that Judge Wood relied upon on page 11, this Court had a later opportunity to address what was done in that case. That was a Northern District of Georgia opinion. And I recognize what was said, but this Court did not adopt that reasoning when it later heard Spike. And, in fact, this Court, in hearing that case on appeal, said, in this circuit, there is no clearly established right to be free from the accidental application of force during And so it later went on to say, so the outcome of this case turns on the issue of whether Officer Griggs in the Spike case intended to shoot DMC, which was the juvenile in that case. So I believe the case that the district court relied upon could not clearly establish the law in and of itself because, as the Court noted at oral argument in the district court, specifically asking plaintiffs' counsel what case from either the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court would put the officer on fair notice that by firing at that dog, he was clearly violating the constitutional rights of the plaintiffs. And plaintiffs' counsel noted that, I think that's difficult. I think there may not be that particular case out there. And so the Spike case relied upon by the district court was revisited by this court. Well, she also, in her opinion, cites our 2003 decision in Vaughn v. Cox. And those facts are materially different, Your Honor. If you have another comment about it, I'll be glad to address how it's different from this case. In that, in Vaughn, the passenger in the car there was actually the object of capture. There was an intent to actually pull it up aside and recognize the passenger as the suspect that had been described with regard to the theft. And so the overarching, I think they said the overarching intent was to stop that vehicle, to be able to bring it to a stop. And because the passenger, even though the shooting was directed at the vehicle and possibly at the driver, because the suspect, and the kid in our case was not a suspect, was the object of the seizure or the intended acquisition of physical control, therefore, it was a Fourth Amendment seizure in that circumstance. We don't have that here. This, and this is one of those cases, and I've seen it in a few district court opinions, in which maybe the plaintiffs, and Ashley was not plaintiffs' counsel who drafted the complaint, but maybe they pled too much in that noting that the intent was to shoot the dog and not to shoot anyone else on the scene. And I would also refer the court to an unpublished case from this court. Wait a minute now. Judge Woods said a reasonable jury could conclude that Vickers shot at Bruce in furtherance of the seizure of the plaintiff from escaping from his control. Because of that, a jury could find that Vickers shot toward Bruce in furtherance of the seizure of the plaintiff. That sounds like Vaughn versus Cox. I don't see how that is Vaughn versus Cox. And here it's clear that it was, that there was no intent to shoot anything other than the dog. I would say that this is one of those cases, and I haven't seen a lot of law on this, but the Twombly-Iqbal description of what is conceivable versus what is plausible, not only was that theory not argued, I don't think that based on the allegations of, that are in the complaint, that it's plausible to conclude that there was a need to shoot a dog to obtain compliance of an already compliant child. This was not, the child was not the object of the seizure. There was someone out there who was evading capture who was the subject of this. It's not in the record. Well, we don't know all of that because there hadn't been any discovery, and you filed your motion at the pleading stage, and normally we decide qualified immunity issues at the summary judgment stage. So you're getting into facts that we don't really know. It seems like it would be premature for us to grant the officer qualified immunity based on the pleadings at this stage, especially if you're going to rely on certain facts about what took place. Well, I would disagree, Your Honor, based upon this Court's decision in Cooper versus Rutherford, which was the bank robbery case where a bystander was struck. And in that case, the officer struck the person who the bank robber was attempting to basically carjack their car, and they were shot in the crossfire from the law enforcement officers with the Jacksonville Sheriff's Department. And in that case, this Court noted and even referenced the Vaughn opinion, said this Court has clearly acknowledged the difference between the events in Vaughn and the exact situation in this case when an innocent bystander or hostage is accidentally shot by police officers chasing a fleeing suspect. Therefore, preexisting case law does not clearly establish that appellees were seized when Officer Black's bullet accidentally struck them during the confrontation with the armed bank robber. That case was decided on a motion to dismiss. In fact, it's almost procedurally identical to this case in that most of the defendants were afforded qualified immunity, as was the case here. And then the one case was one claim was left in against Officer Black. And on a motion to dismiss standard, this Court determined that the law was not clearly established in those circumstances and that the case was distinguishable from Vaughn. And the burden with regard to qualified immunity is on the plaintiff to show that the law was truly clearly established. Let me tell you how I think this case ought to be analyzed. And frankly, neither one of you, neither brief analyzes it this way. It seems to me that this child was already seized. This child was on the ground at the command of the officer at gunpoint. There's no indication. In fact, the complaint is pretty clear that everybody was compliant. Therefore, the intentional requirement in Brier, B-R-O-W-E-R, the Supreme Court case, that there has to be an intent to seize this person, that has already been satisfied. And now we are at the second prong of the Fourth Amendment violation, namely whether the force used was unreasonable, which seems to be an objective test that does not require an intent with respect to this particular person seized. How do you respond to that? Well, I'll agree that we haven't addressed it in that manner to this point. I would describe the taking, even based on the pleadings. And I understand I've got the benefit of actually having looked at all the evidence in the GBI file and all that and understanding what the issues down the road might be, if that's necessary. But I'm not sure that I agree that the child was necessarily seized. This was more of a situation of bringing a temporary, I guess, detention for safety reasons, both to the officer and the children, because of the intent to capture the suspect. And so I'm not sure that I agree with the Court that we get there and just say, okay, we've answered step one, it was a seizure, and it's just unreasonableness. But does the complaint say that the child was seized? It does not. I believe it does. But that's a legal conclusion, so it's not conclusive. So I see your argument. And, of course, if you are correct that the seizure occurred only when the bullet hit the child, our Vaughn case, and certainly to the extent we find persuasive the Spite and Cooper cases, mean that there was no intent to seize that child and, therefore, no violation at all. Back to my, even if the child were already seized, and this is really directed to the other party because I'm not sure, and even if the test before us is objective under Graham, I'm not sure that the law is clearly established because there has not been any case that I am aware of where there has been a seizure and then an accident happens and the officer was unreasonable. Let's assume the officer was unreasonable in shooting the dog because it was not necessary, objectively. But there has been no case where that Graham objective test has been applied in a situation where the force was exerted not against that person seized, but against even another person, but certainly not a dog or an inanimate object. Like a hypothetical, suppose the officers have arrested two people and put them in the back seat of the patrol car handcuffed, so they are seized. The officers have been trying to catch these people for a long time and they celebrate and they shoot up in the air and the bullet hits a traffic light and ricochets back and hits one of these people. I doubt that that is clearly established, even though it was unreasonable to do what they did. On the other hand, it is a whole lot closer case for the plaintiff if you got those two same people in the back seat and one of them curses the officer so the officer shoots him and accidentally hits the other. That is pretty close and we probably got cases, certainly in the tort law, where there is transferred intent. But our case, I think, is closer to the traffic light than the intentional shooting of a person. So I am wondering, in question to the other party, is whether or not the law is clearly established even if the child were already seized. Do you have a comment on that? I do have a brief comment. I don't think there is a lot of law on that which would beg for qualified immunity. The only cases I found with regard to animals and dogs were a couple of district court cases. One was years ago, was the Dom case. Both were cited in the brief and the other one is the Brandon case. But neither of those found that there was a seizure with regard to the animal. But I am not sure that the object of the acquisition was under control in those. I understand what you are saying and I agree it would be a tougher case if we assume seizure and then have to step to reasonableness. But I still don't think, I agree with what I think I hear you saying, that there is still not enough to clearly establish it on that problem. And as any good defense lawyer would tell you, it doesn't matter to me if you reverse the district court's decision on my theory or your theory. I will take it either way. But I agree that that is a, I don't think there is anything there. And I will be interested to see what Ashley's response is to that. All right. Thank you, Mr. Strickland. We will hear from Ms. Madison. Thank you. May it please the court. I'm Ashley Madison and I represent Amy Corbett on behalf of her minor SDC in this civil lawsuit that was brought as a result of an incident that occurred back in July of 2014. I think it's important to probably go through the facts, the allegations in the case, so that the court can use those during the analysis of both the seizure and then the objective reasonableness components of the analysis. As the court is aware, this entire investigation stemmed from a criminal suspect, Christopher Barnett, who had been located in the Douglas, Georgia, Coffey County area. Specifically, he had been seen wandering around the home of the plaintiff, Amy Corbett. She owned a mobile home and she had a minor child, two children, one of which was a minor and one was of majority age. And SDC, the minor child, was the one that ultimately was shot. It's undisputed that the plaintiffs, Ms. Corbett and then the previous plaintiffs, the children and their parents, did not know the suspect. There's absolutely no indication there was any relation. He just happened to be in the area. Outside of the mobile home, there were a number of people, primarily children, ranging from the age of 18 months to 18 years, and there were also adults. Deputy Vickers, who was a member of the Coffey County Sheriff's Department, as well as some GBI agents, were involved in an investigation to try to apprehend the suspect. Originally, the thought was to surveil the area using a helicopter and a canine team. So you're not going beyond the pleadings, are you? I am not. Okay. Ultimately, Deputy Vickers and two agents decided to approach the property and they approached the exterior of the mobile home where the children were. Mr. Barnett was also present. Deputy Vickers and the other officers instructed everyone, including the children at the scene, to get down on the ground and drew pistols to effectuate this order. According to the allegations in the complaint, several of the children actually had barrels to their backs. Does it matter that the complaint does not suggest which officers drew pistols or put the guns in the children's backs? For purposes of this particular issue before the court, I don't believe so because really what we're looking at is the discharge of the firearm that ultimately struck SDC. So the court has already determined those other plaintiffs, those other minors, whether their claims could survive the motion to dismiss, and the court ultimately determined not because there was not enough specificity to determine which officers had the guns in which minors' backs as well as some other issues. But for purposes of this, I don't believe so because I think what we're looking at, at least at this stage, is the discharge of the gun and then the resulting injury. And so Deputy Vickers unholsters his weapon. At this time, while the children are on the ground, the family dog, Bruce, and the record is not clear about the type of dog it is, but the dog apparently comes out from underneath the mobile home and begins to make its way towards the owners. We're not sure at this point from the pleadings who the owners are, whether it's the children. I believe the allegations indicate that the mother was in the actual home. So likely the children. And as the dog is making its way— Were both of her children there outside, or was one of the children inside with her? Your Honor, I cannot recall. I believe Mr. Rich was outside, if I believe. He was the older one, almost 18, or at least at the time the lawsuit was filed, 18. But the 10-year-old was approximately 18 inches from Deputy Vickers, and he was the subject of the plaintiff's complaint. And so as Bruce is making his way to the owners, Deputy Vickers discharges the weapon. Bruce is the dog. Bruce is the dog. He intentionally discharges the weapon, and I think that that's a very critical point to make for the Court's analysis because the way that this discharge has been characterized by the defense is that it was an accidental discharge. And the trial court went to great lengths to address this, and the plaintiff takes the position that the discharge was intentional, and that's important because when you look at it in the context of the Von V. Cox case, what you look at is when an officer intentionally discharges the weapon or uses some instrumentality intentionally but does not anticipate or does not intend the resulting damage, that's really of no consequence for the Court's analysis. What you look at is did he intend to discharge the weapon. And if he sets that instrumentality in motion intentionally and he does so and it causes a restriction on the plaintiff's movement, then that would be a seizure because that was one of the issues that was before the Court and which has been discussed today. But that is a seizure, and so we have to look at it also in the context of the objective reasonableness test for the Court. Go ahead. You go. So you're arguing today that the child was seized when the child was struck by the bullet. Actually, I'm arguing that he was seized when he was ordered on the ground. Okay. I just wanted to be clear. It was a continuation once there was a discharge of the firearm and he was struck. But the seizure began when he was instructed to get onto the ground and complied with the order by all accounts, by the allegations and the complaint. And under Mendelsohn, the Supreme Court case, basically the test is if the person believes that they are not free to move, and this can also include the brandishing of weapons and the threat of force and the threat of the use of the weapons. And so, obviously, with dealing with a child, I would think that that test would be passed with flying colors when you have somebody that's not even of the age of majority. You've got essentially a 10-year-old, and by all accounts was compliant. But in any event, so the seizure, from our perspective, would have occurred at the time that the gun was drawn, the plaintiff was forced onto the ground and continued on and through the discharge of the firearm until the time that he was struck. But in terms of the defense relies on the Spite v. Griggs case, that is an accidental discharge case. I don't think that has any relationship to what actually happened here. In that case— But it's also unpublished. I'm sorry? Spite v. Griggs is an unpublished opinion? I believe so. I'm not certain, Your Honor. But the problem with that case is that this was a minor who had fled the scene after an officer had conducted a business check based on something that had happened, and the minor just happened to be there. I believe they had stolen the car. When the officer went to go ask them some questions, the minor then retreated to the woods. And the evidence was that the officer unholstered his weapon to be able to use the light on his weapon so that he could see into the woods, not because he had any sort of anticipation of harm or intended to use it. And it was only—and he actually, despite his training instructing him not to do that, he placed his finger on the actual trigger. And then when he went to go, I believe, tackle the minor, after the minor said that he gave up, the weapon discharged. And it was very clear in that case that that was an accidental, unintentional discharge. Here what we know is that the officer intended to fire at Bruce. He missed the first time. The dog then went underneath the home. He retreated and then came back out, not in an aggressive manner, not to attempt to come towards the officer, but again to go back to the owners. And so when you look at that and what the officer was faced with, there's no indication that there was any fear of any imminent harm. So if we were going to point to a case that clearly establishes the law that the officer should have reasonably been aware of, what case would that be? I think you look at the Thornton v. City of Macon case. And in that case, it is evident that it's clearly established when there's excessive, when there is any force that is used, when there's no threat of harm, when there's somebody that's not even a suspect, and where there is no, hold on just a second, Your Honor. I'm sorry. I'm trying to locate this case. I'm sorry. Clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. In this case, there was an arrest. There was a seizure within the meaning of the Fourth Amendment. But that case is also important because where one is not suspected of committing a crime, there is no threat posed, and the individual is not resisting, any force is considered excessive. And this would be intentional or accidental because it would be a use of force. And so regardless of how the court were to characterize it. That case helps you only if the child were already seized, because the bullet itself cannot be a seizure of this child under our Vaughan case because the bullet wasn't intended to stop the child. Like it was in Vaughan, the bullet was intended to stop Vaughan. However, the bullet was intended to maintain control over the situation. It was intended to stop the dog and sensibly so that the dog would not cause SDC and the other children to become distracted. That was the district court's theory. But I don't think that's clearly established, is it? I mean, we don't have, I don't know of any case where that kind of transferred intent has been clearly established as a Fourth Amendment violation. Do you? I think it's cloudy. You think it's what? I think it's cloudy. But I think that there's enough guidance from the Thornton v. City of Making case about when a use of force on somebody that is not a suspect is already characterized as excessive, I think that this court can use that as guidance for what's clearly established. I mean, if it's clearly established that using excessive force and carrying out an arrest constitutes a violation of the Fourth Amendment, and that same case says where somebody is not a suspect, there's no threat posed, no resisting, any force is excessive, I think that that is fair warning for the officer. I think that also if you look at that spite, I know it's unpublished, but the Spite v. Griggs case says, you know, we've long held that it's a violation of the Fourth Amendment for a police officer to intentionally use gratuitous and excessive force against a suspect who is under control, not resisting and obeying commands. These children were not even suspects, yet they were obeying commands. And force, there was an application of force that was used against them. This child was the subject of a bullet. Can an unpublished opinion constitute clearly established law? Unlikely. Unlikely, but I think when you read that... I don't know. I'm asking the question. It could. I don't know the answer to that. Are you aware of a case that says it one way or the other? I'm not, Your Honor. But I think if you read that, just to give context to the Thornton case and then the Vaughn case, which says, when you intentionally cause an instrumentality to be set in motion that causes this result, I think that that provides fair warning to Deputy Vickers. And so, essentially, we think that the trial court, citing the Vaughn v. Cox and the Cooper v. Rutherford cases, correctly determined that at this stage, at the motion-to-dismiss stage, that it could not be held that Deputy Vickers' actions were objectively reasonable, that clearly he had warning to know that what he was doing clearly violated an established constitutional right. And what was that warning, that he was violating a clearly established constitutional right? The Vaughn v. Case, that he set this instrumentality in motion. He did it intentionally. It was an intentional discharge, and that he would... But it would necessarily follow that that would be unreasonable, the intentional discharge. Correct. Well, so in looking at the face of the complaint, so he's intentionally discharging his weapon toward a dog. So we know from the complaint, we know there is a dog. We know the dog's name is Bruce. We know the dog, whether the dog, we don't know whether the dog is completely unsecured, but we know the dog has movement. Correct. And is able to go under the house and then come out to at least approach the owners per the complaint, correct? Right, correct. So you've also pointed to, I think it's paragraph 44 of your complaint, that Bruce posed no threat. But that's a legal conclusion. We're not bound by. That's correct. I think you also look at what we indicated in the complaint, which was at no time did Deputy Vickers ask that the animal be restrained. Is that required? When you have a dog that has movement? I don't think it's required, but I think, again, it's additional indication from the allegations about the objective reasonableness. What did he perceive? Well, and, again, we're in the motion to dismiss stage, so I'm trying to stick with the complaint itself. But you also say that, so we take it in your complaint, nonlethal measures and equipment were readily available. That's in the complaint. But that they could have been deployed prior to the decision. But that's a legal conclusion, too, as to whether there was sufficient time for an officer to deploy such countermeasures, correct? I believe so. There might be some also factual component to that as well, which is they were available to be used but not necessarily the propriety of actually using them and when. I think it was just a statement that there were other safer alternative means. Available. Available. But certainly no indication, and we're not entitled to take this from the complaint. It's true that they could have been deployed as a more reasonable alternative because we don't know. We're not there yet. The complaint doesn't talk about whether the dog was charging, whether there was sufficient time, so that's more of a legal conclusion. Correct. Correct. That's correct. I see that my time is up. Thank you, Ms. Madison. Thank you. We'll hear again from Mr. Strickland. Thank you, Your Honors. Briefly, I'll go to Judge Branch's last point, and I would say that based upon the paragraph 41, the specific allegation is that instead of using such as an appropriate alternative means to subdue Bruce, I believe that, you know, the statement in there is that some, at least some level of subduing of the dog would be authorized by the reading of that paragraph when you read the complaint in its entirety. I would also go into Judge Wilson's question, sorry, about whether an unpublished disposition can establish, clearly establish law. I do not believe that that is the case. I think the case law that mentions the Supreme Court and this Court and the Supreme Court of Georgia refers to, I think, I think it uses the term published decisions of those bodies, so I don't think it can. However, I don't think the converse is true. I think that unpublished opinions can illustrate the lack of clarity of the law, and we're talking about fair notice to law enforcement officers, and I always have to remind myself I'm not always truly objective in this category because of having law enforcement officers in the family, but it's a pretty harsh rule. And I think Barks v. Joyner says it best. We can't expect reasonable police officers to know more than reasonable judges about the law, and when there's this level of disagreement, and that's why I think the Cooper v. Rutherford opinion is important because it does distinguish Vaughn. I think that Ashley alluded to the fact that she thought Vaughn was the Eleventh Circuit case that could clearly establish the law here. She said Thornton v. City of Macon. If we go to the alternative view of this case, I think that Judge Anderson mentioned that Thornton could at that point. Thornton does issue a broad legal proposition about the use of force and the reasonableness of force, but the facts of Thornton have nothing to do with a situation like this one and the shooting of a dog. My recollection is that that occurred on the steps of an apartment. I didn't have a copy of Thornton right in front of me, but Thornton was a markedly different case on the facts. No, but in the court, and we said in Thornton, that as the district court found sometimes no factually particularized preexisting case law is necessary for it to be very obvious to every objectively reasonable officer facing the defendant's situation that his conduct violated the constitutional rights to be free from excessive force. We have to take that into consideration as well, don't we? You don't need exact facts. I understand that, but I also know that there is much other authority from this Court cautioning an expansion of the obvious clarity doctrine. And I don't believe this is a case that you would walk into and say that there's obvious clarity based on the allegations in the complaint and based upon these other cases dealing with whether it was a seizure. And to borrow Judge Anderson's analogy, I mean, I don't think that you can say this is an obvious clarity case on the reasonableness issue, even if you assume there was a seizure, that it's just not, this is not one of those cases. I'm surprised that this case isn't settled. That this case is what? Hasn't settled. Hasn't settled. You don't have to answer that. I would also say that, you know, I would note that Ashley's response to Judge Anderson that the issue, or maybe it was you, Judge Wilson, that it was cloudy on the particular issue of reasonableness. That, again, supports qualified immunity. It can't be cloudy. It's got to be crystal clear. And this is simply not a case. As unfortunate as it is, it's, don't worry about undisputed, but it's in the complaint that the intent was to shoot the dog, that there were at least some measures that could have been used to subdue it, but the measures we used were criticized. On those circumstances, there is no clearly established law that would have put Officer Vickers on notice that what he did was unlawful, was unreasonable and unlawful. And we would ask that you reverse that aspect of the district court's opinion. Thank you, counsel. Thank you. And the court will be in recess until 9 o'clock tomorrow morning.